UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INFINITY ROOFING & SIDING, INC.,

        Plaintiff,                                Hon. Sally J. Berens

v.                                               Case No. 1:21-cv-889

ALLSTATE INSURANCE COMPANY,

        Defendant.

_____/

## OPINION

Plaintiff Infinity Roofing & Siding, Inc. (Infinity), as assignee of rights under an insurance policy issued by Defendant Allstate Insurance Company (Allstate), filed this diversity action against Allstate alleging a claim for breach of the insurance policy, as well as a claim for penalty interest under the Michigan Uniform Trade Practices Act, Mich. Comp. Laws § 500.2006.[1] (ECF No. 1.) The claim arises out of a weather-related event on March 14, 2019, that resulted in alleged damage to the covered property.

Presently before the Court is Allstate's Motion for Summary Judgment. (ECF No. 51.) For the following reasons, the Court will **GRANT** the motion and dismiss Infinity's complaint with prejudice.[2]

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the Court conduct all further proceedings in this case, including entry of judgment.

[2]  Although Allstate has requested oral argument, the Court finds that oral argument is unnecessary as the parties' briefs adequately develop the issues in contention.

## I.   Background

Infinity is a Texas corporation authorized to do business in Michigan. Allstate is an Illinois corporation that issues property and casualty insurance. Prior to May 22, 2019, Allstate issued a homeowners insurance policy, Policy No. 065 376 082 (the Policy), to Michigan residents Sidney and Diane Long covering their real property located at 127 Upland Avenue, Charlotte, MI 48813 (the Property). In May 2018, Allstate renewed the Policy for a term commencing May 22, 2018, and expiring May 22, 2019. (ECF No. 51-1 at PageID.610.) Under the Conditions section, the Policy contained the following provision:

**What You Must Do After A Loss**

In the event of a loss to any property that may be covered by this policy, **you** must:

. . . .

> g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:
>
>> 1) the date, time, location and cause of the loss;
>>
>> 2) the interest **insured persons** and others have in the property, including any encumbrances;
>>
>> 3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
>>
>> 4) any other insurance that may cover the loss;
>>
>> 5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
>>
>> 6) at **our** request, the specifications of any damaged **building structure** or other structure;
>>
>> 7) evidence supporting any claim under the Credit Card, Bank Fund Transfer Card, Check forgery and Counterfeit Money protection. State the cause and amount of loss.

(*Id.* at PageID.637–38 (emphasis in original).)

2

On March 14, 2019, a hailstorm allegedly damaged the Property's roof. (ECF No. 1 at PageID.3.) The Longs learned of the loss on that date (ECF No. 51-6 at PageID.707–08), but they did not notify Allstate of the loss until July 1, 2019. (ECF No. 51-2; ECF No. 51-6 at PageID.711.) The Longs did not provide Allstate a sworn proof of loss at that time. On or about July 10, 2019, Allstate inspected the Property and estimated the value of the damage as $3,702.70. On October 5, 2019, Infinity conducted an inspection of the roof and estimated the cost of repair and replacement to be approximately $219,166.98. Allstate conducted a second inspection on May 4, 2020, and estimated the value of the damage as $4,262.40. (ECF No. 1 at PageID.3–4.)

On September 26, 2020, the Longs assigned their rights to benefits under the Policy to Infinity. (ECF No. 51-5.) On December 10, 2020, apparently in response to a prior letter from Infinity's counsel, Allstate sent Infinity's counsel a letter setting forth the Policy's requirements for what the insured must do after a loss and conditions for coverage, including the filing of a sworn proof of loss within 60 days. (ECF No. 55-1 at PageID.759.) The Longs subsequently submitted a sworn proof of loss to Allstate on January 6, 2021. (ECF No. 51-3.)

Upon receipt of the sworn proof of loss, Allstate investigated the claim and issued a denial letter on February 11, 2021. In its letter, Allstate asserted that it had determined that the claimed hail damage was caused by thermal cracking and expansion and that it found no evidence of a "one-time sudden and accidental event" that caused the alleged damage. (ECF No. 51-4 at PageID.668.) The letter also set forth various terms of the Policy, including those relating to losses not covered under Coverages A and B, as well as provisions regarding the insureds' obligations following a loss, including submission of a sworn proof of loss within 60 days of the loss. (*Id.* at 668–70.) Finally, the letter reserved Allstate's right to deny coverage or assert any coverage defense under the Policy. (*Id.* at PageID.670.)

## II.   Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.   Discussion

Allstate contends that it is entitled to summary judgment because the Longs, Infinity's assignors and the insureds under the Policy, failed to comply with their obligation to file a sworn proof of loss within 60 days of the loss, which occurred on March 14, 2019. The parties agree that Michigan law applies in this case. When deciding an issue of state law, a federal court sitting in diversity must apply the law of the forum state in accordance with the decisions of the forum state's highest court. *See Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). If the state's highest court has not addressed the issue, the district court may look to other relevant data, including decisions from the state appellate courts, which should be disregarded only if the court is convinced that the highest court would rule otherwise. *Id.*

To begin, because Infinity is proceeding as the assignee of the Longs' rights under the Policy, it is subject to the same defenses as the Longs. *See Burkhardt v. Bailey*, 260 Mich. App.

4

636, 653 (2004) ("An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." (citing *Nichols v. Lee*, 10 Mich. 526, 528–29 (1862))). It is well established under Michigan law that an insured's failure to file a proof of loss within the time provided under the insurance policy—generally 60 days—will bar a lawsuit by the insured for breach of the policy. *Peck v. National Liberty Ins. Co. of Am.*, 224 Mich. 385, 387 (1923); s*ee also Westfield Ins. Co. v. Appleton*, 132 F. App'x 567, 570 (6th Cir. 2005) (noting that "Michigan law . . . strongly favors insurance companies in connection with insurance policies that contain the somewhat standard 'proof of loss' requirement—usually sixty days after a claimed loss" (citing *Dellar v. Frankenmuth Mut. Ins. Co.*, 173 Mich. App. 138, 145 (1988))); *Reynolds v. Allstate Ins. Co.*, 123 Mich. App. 488, 490–91 (1983) (holding that the trial court properly granted the insurer's motion for summary judgment where the insured failed to file a written proof of loss within 60 days of the loss). A sworn proof of loss serves the following purposes: "(1) allow[s] the insurer an opportunity to investigate the loss; (2) allow[s] the insurer to estimate its rights and liabilities; and (3) prevent[s] fraud." *Wineholt v. Cincinnati Ins. Co.*, 179 F. Supp. 2d 742, 752 (W.D. Mich. 2001) (citing *Barnes v. State Farm Fire & Cas. Co.*, 623 F. Supp. 538, 540 (E.D. Mich. 1985)).

It is undisputed that the Longs did not submit a sworn proof of loss to Allstate within 60 days after the loss, which occurred on March 14, 2019, as the proof of loss was not submitted until January 6, 2021—almost two years after the loss.

Infinity contends, however, that Allstate has failed to demonstrate its entitlement to summary judgment for several reasons. First, it argues that because the terms of the Policy are ambiguous as to when an insured must submit a sworn proof of loss, Allstate must demonstrate actual prejudice, which it has not done. (ECF No. 55 at PageID.752–53.) As Infinity appears to concede, an insurer is not required to show prejudice where the policy provision specifies a time

5

limit. *See Dellar*, 173 Mich. App. at 144 (stating that "the failure to file a signed and sworn proof of loss within sixty days of the loss bars recovery on a claim *without regard to whether the insurer is prejudiced by such failure*" *Id*. at 145 (citing *Reynolds*, 123 Mich. App. at 490–91) (italics added)); *Pieces of 8, Inc. v. Insurance By Burley Agency Inc.*, No. 233904, 2002 WL 31447078, at *1 (Mich. Ct. App. Nov. 1, 2002) ("As noted by the panel in *Dellar*, where, as here, the case involves a policy containing a provision requiring proof of loss within a specified time frame, a separate line of authority exists. Under these cases, an insured's failure to timely file a sworn proof of loss is deemed a failure of a condition precedent to the insurer's responsibility under the policy." (footnotes omitted)). Infinity contends that this rule does not apply in light of the following endorsement:

> A.   Under item 3., **What You Must Do After A Loss**, the following paragraphs are added:
>
> . . . .
>
> Failure to give any notice required to be given by this policy within the time specified in this policy shall not invalidate any claim made by an insured person if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

(ECF No. 51-1 at PageID.657.) Under Michigan law, "[a]n insurance policy is deemed ambiguous when its provisions are capable of two or more interpretations that conflict." *Allstate Ins. Co. v. Punturo*, 407 F. Supp. 3d 700, 703 (W.D. Mich. 2019) (citing *Fromm v. Meemic Ins. Co.*, 264 Mich. App. 302, 311 (2004)). Contrary to Infinity's assertion, the endorsement does not render the 60-day period for filing a sworn proof of loss ambiguous. Rather, the endorsement simply modifies the period for filing a sworn proof of loss when it is not "reasonably possible" for the insured to give the insurer such notice within the required period. Infinity presents no evidence that it was not "reasonably possible" for the Longs to notify Allstate within 60 days of the loss. As set forth above, Mr. Long testified that he learned of the damage to the Property on March 14, 2019 (ECF

No. 51-6 at PageID.707–08), yet he did not notify Allstate of the loss until 110 days later, on July 1, 2019. Because the Longs could have provided a sworn statement to Allstate within 60 days of the loss, Allstate is not required to establish actual prejudice in order to enforce the sworn-proof-of-loss provision.

Infinity also contends that Allstate's failure to comply with Mich. Comp. Laws § 500.2006(3) weighs against enforcing the Policy's 60-day period. This statute, which is part of the Uniform Trade Practices Act, provides, in part, that "[a]n insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days." In *Dellar*, *supra*, the court declined to adopt the plaintiff's argument that her duty to provide a sworn proof of loss within 60 days was contingent upon the insurer's compliance with Section 500.2006(3). 173 Mich. App. at 142. Instead, it held that "a breach of such duty is a factor relevant to whether an insurer is estopped from asserting as a defense to payment of an otherwise valid claim the failure on the part of the insured to file a proof of loss." *Id.* at 144. The court found that an issue of fact remained as to whether the insured had substantially complied with the proof of loss requirement and whether the insurer waived and/or was estopped from asserting the plaintiff's failure to timely file a sworn proof of loss as a defense. The court noted that the plaintiff gave the insurer immediate notice of the fire loss, and the insurer commenced a full investigation within days of the notice. Within the 60-day period, the insurer had obtained the plaintiff's tape-recorded statement concerning the fire, the plaintiff had been charged with arson and intent to defraud the insurer, and the insurer had requested that the plaintiff submit to an examination under oath. Also during this period, the plaintiff's counsel informed the insurer that neither he nor the plaintiff had a copy of the policy and requested a copy of the policy on at least three occasions, but the insurer failed to provide a copy until after the 60-

day period for filing a proof of loss expired. *Id.* at 146. The court found that the information the

insurer obtained was the "functional equivalent" of a sworn proof of loss. In addition, as to waiver

and estoppel, the court pointed to the insurer's awareness that neither the insured nor her attorney

had the policy and the insurer's failure to provide a copy—which set forth the sworn statement

requirement—until after the 60-day period expired. The court also noted that the insurer breached

its statutory duty to inform the plaintiff within 30 days of her notice of loss of the materials

necessary to constitute satisfactory proof of loss. *Id.* at 147–48.

Here, Infinity raises estoppel (but not waiver) to preclude Allstate from relying on the

Longs' failure to submit a timely sworn proof of loss to defeat Infinity's claim. Estoppel requires

"some misleading conduct or language of one person which, being relied on, operates to the

prejudice of another, and is applied to the wrongdoer by the court in denial of some right, which

otherwise might exist, to prevent a fraud." *Dahrooge v. Rochester-German Ins. Co. of Rochester,*

*N.Y.*, 177 Mich. 442, 452 (1913); *see also Appleton v. Westfield Ins. Co.*, No. 260875, 2006 WL

2519532, at *3 (Mich. Ct. App. Aug. 31, 2006) ("The question regarding estoppel is whether the

insurer's actions or lack of action prevented the insured's compliance with the policy provisions.").

Infinity bears the burden to prove an estoppel. *Helmer v. Dearborn Nat'l Ins. Co.*, 319 Mich. 696,

700 (1948). In contrast to *Dellar*, the Longs did not notify Allstate of the loss immediately after it

occurred; instead, they waited until almost two months after the 60-day sworn-proof-of-loss period

expired. Infinity does not claim that the Longs did not have a copy of the Policy and thus had no

way to determine their obligations following a loss. Nor do they claim that Allstate was aware of

such fact. As set forth in *Casey v. Auto Owners Insurance Co.*, 273 Mich. App. 388 (2006):

> It is well established that an insured is obligated to read his or her insurance policy
> and raise any questions about the coverage within a reasonable time after the policy
> is issued. Consistent with this obligation, if the insured has not read the policy, he

or she is nevertheless charged with knowledge of the terms and conditions of the insurance policy.

*Id.* Thus, under Michigan law, the Longs were charged with knowledge of the Policy's conditions upon a loss and clearly had the means to determine what they were required to do to perfect a claim under the Policy, including filing a sworn proof of loss within 60 days. On the other hand, Infinity fails to point to anything Allstate said or did that induced reliance by the Longs and prevented their compliance with the Policy, or led them to believe that Allstate would not enforce the terms of the Policy.[3] Accordingly, Infinity fails to demonstrate that the doctrine of estoppel precludes Allstate from enforcing the sworn-proof-of-loss requirement, and Allstate is entitled to summary judgment.

## IV.   Conclusion

For the foregoing reasons, the Court will grant Allstate's motion for summary judgment (ECF No. 51) and dismiss Infinity's complaint **with prejudice**.

A separate order will enter.

Dated: February 1, 2023                   _/s/ Sally J. Berens_
                                          SALLY J. BERENS
                                          U.S. Magistrate Judge

---

[3] The Court notes that the facts at hand are not particularly suited for estoppel. Under the Policy, the Longs were required to file a sworn proof of loss within 60 days of the loss. For estoppel to apply, Infinity must point to Allstate's words or action within the 60-day period that induced the Longs to believe that they were not required to submit a sworn proof of loss before that period expired. *See Olivia Marie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 2:11-cv-12394, 2013 WL 572230, at *8 (E.D. Mich. Feb. 13, 2013) (citing 13 Couch on Ins. § 194.6 (3d ed. 2012) ("When insured claims that he or she was prevented from complying with policy provision because he or she relied on insurer's conduct or statements, it necessarily follows that insurer's conduct must have occurred within the period in which there was still time for insured to comply with policy provisions.")). Infinity has not met this requirement. Furthermore, the duty imposed by Section 500.2006(3) arises only on "receipt of a claim." Whether "a claim" refers merely to notice of loss or to a sworn statement is immaterial in this case, as it is undisputed that this statutory duty was not triggered during the 60-day period as the Longs submitted nothing to Allstate during that time.